UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEPHEN HALL,

                Plaintiff,

v.                                                                Case No. 20-cv-1631-pp

ANGIE WOLLENHAUPT, MICHAEL D. GIESE,
CO GRACE, CO JACKSON OR JOHNSON,[1]
CO PEREZ, CO CATTAN, CAPTAIN GREENWALD
and CAPTAIN GABOR,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 8), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 12) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Stephen Hall, who is in custody at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, his motions for preliminary injunction and appointment of counsel, dkt nos. 8, 12, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was in custody when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case

---

[1] The first page of the complaint says CO Jackson, while later pages of the complaint refer to CO Johnson. Dkt. No. 1 at 1, 2, 4.

1

without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the incarcerated plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 24, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $34.17. Dkt. No. 6. The court received that fee on December 21, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff was a pretrial detainee at the Waukesha County Jail when he filed the complaint. Dkt. No. 1 at ¶3. He says that during the end of the month of April 2020, he was on administrative segregation, meaning that he was locked in his cell twenty-three hours a day. Id. at ¶8. He alleges that while in administrative segregation, he was not given access to cleaning supplies and his room wasn't being cleaned. Id. The plaintiff says that on April 23, 2020, while Captain Greenwald was conducting a wellness check, Greenwald looked in the plaintiff's window, told him that his room was filthy and instructed him to throw everything away, "including his food (Lunch & Dinner)." Id. at ¶9. The plaintiff says that he told Greenwald that he was on a religious fast, which was why he hadn't eaten the food yet. Id. at ¶10. He says that Hall got a garbage can, opened up the tray chute in his door and said, "That doesn't matter. I'm

3

giving you an order to throw everything away now!" Id. at ¶11. The plaintiff says that he was intimidated, so he complied. Id. at ¶12. The plaintiff says he filed a complaint about this incident, and that Captain K. Gober responded that she would not allow him to fast or replace the discarded food because the plaintiff "chose not to share the location of his religious center." Id. at ¶13.

The plaintiff alleges that on May 8, 2020—a couple of weeks later—while he was in the law library, Greenwald conducted another "facility rounds check" and ordered COs Grace and Johnson to go in the plaintiff's room and throw away all the food he had in there. Id. at ¶14. The plaintiff says that when Grace and Johnson went into his room with a garbage can, several inmates told them that the plaintiff was fasting for religious reasons, but they threw the food away anyway. Id. at ¶15.

On June 23, 2020, Greenwald ordered CO Perez to have the plaintiff throw out all his food. Id. at ¶16. While the plaintiff was out for his one hour of non-cell time, Perez and CO Cattani went into his cell with a garbage bag and began throwing the plaintiff's breakfast and dinner into the garbage. Id. at ¶¶17-18. When the plaintiff told them that he was fasting for spiritual/religious reasons, they responded, "You don't have any rights." Id. at ¶19. The plaintiff says that as Perez walked by him with the garbage bag, there was a "profane exchange" in which Perez told him, "That's why your ass is gonna starve tonight." Id. at ¶20.

The plaintiff asserts that several days later, Cattoni saw him eating his dinner around 10:00 p.m. and gave him a disciplinary form for eating after the approved time, even though Cattoni had been made aware that he was still fasting. Id. at ¶21. The plaintiff filed grievances and got responses from jail administrators Wollenhaupt and Giese; the plaintiff says that the response

4

"clearly stated the administrators would not be approving his fast, within their institution for various reasons." Id. at ¶¶22-23.

The plaintiff alleges that the defendants violated his rights under the First and Fourteenth Amendments. Id. at ¶¶26-29. He asks for compensatory and punitive damages, costs and injunctive relief allowing him to practice his religion without interference. Id. at ¶¶30-33.

C.   Analysis

"Prisoners retain the right to exercise their religious beliefs, although that right is not unfettered." Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009). Where prison officials "personally and unjustifiably place[ ] a substantial burden on [an inmate's] religious practices," they may violate an inmate's constitutional rights. Thompson v. Holm, 809 F.3d 376, 379-80 (7th Cir. 2016) ("We have repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden."). "A substantial burden '[p]uts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Id. (quoting Thomas v. Review Bd., 450 U.S. 707, 717-718 (1981)). "A burden is unjustified if it is not reasonably related to a legitimate penological interest." Id. To determine whether the burden is justified, a court must consider "(1) whether the restriction 'is rationally related to a legitimate and neutral governmental objective'; (2) 'whether there are alternative means of exercising the right that remain open to the inmate'; (3) 'what impact an accommodation of the asserted right will have on guards and other inmates;' and (4) 'whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns.'" Id. (quoting Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004)).

The plaintiff has not identified his religious faith, but in 2020, Ramadan (the month of fasting, prayer, giving and self-reflection observed by Muslims) was April 23 through May 23. https://www.calendardate.com/ramadan_2020.htm. Regardless, the plaintiff has asserted that his religious faith required him to fast and that the defendants knew this but prevented him from doing so by not allowing him to save his food until after sundown. As to the various captains and correctional officers, the plaintiff has stated sufficient facts to allow him to proceed on a claim that they violated his First Amendment rights to practice his religion. He also alleges that in ruling on his inmate grievances, the jail administrator defendants—Gober, Wollenhaupt and Giese—told him that he was not going to be allowed to practice his faith, facts sufficient to allow him to proceed on a claim that they violated his First and Fourteenth Amendment rights.

### III. Plaintiff's Motion for Preliminary Injunction (Dkt. No. 8)

A little over a month after filing his complaint, the plaintiff filed a memorandum of law in which he complained of various issues at the Waukesha County Jail in addition to the religious fasting issue described in the complaint. Dkt. No. 8. For example, he asserted that at the jail he was confined to his cell for twenty-three hours a day, he was denied hygiene items and adequate medical care, he could not exercise, he could not use the law library and that guards used excessive force against him three times. Id. at 1-4. The plaintiff requested a preliminary injunction and he filed an order to show cause why a preliminary injunction should not issue enjoining the defendants from violating his rights. Dkt. No. 8-1.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the

6

Case 2:20-cv-01631-PP   Filed 09/08/21   Page 6 of 15   Document 16

burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). The purpose of such an injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." Fahenm-El v. Klincar, 841 F.2d 712, 717 (7th Cir. 1988). To obtain a preliminary injunction, the plaintiff has the burden of establishing that: (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer irreparable harm without the injunction. Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health, 699 F.3d 962, 972 (7th Cir. 2012) (citing Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583, 589-90 (7th Cir. 2012)).

In the context of prisoner litigation, the scope of the court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

First, the plaintiff no longer is in custody in the Waukesha County Jail—he was transferred to a state prison two and a half months after he filed his federal complaint, and about forty-five days after he filed the memorandum of law. https://appsdoc.wi.gov/lop/detail.do (last visited September 7, 2021). See also, Dkt. No. 14 (change of address letter from plaintiff). Because the plaintiff

7

no longer is in the facility where the events of which he complained were occurring, he cannot demonstrate that he will suffer irreparable harm if the court does not grant his request for preliminary injunctive relief. And generally, a prisoner's transfer from one prison to another moots claims for declaratory or injunctive relief against officials at the prior prison. See Ross v. Mebane, 536 F.2d 1199, 1202 (7th Cir. 1976) (affirming a District Court's holding that "injunction restraining officials at Oxford from the future imposition of certain forms of disciplinary action on the prisoner" was moot because the prisoner was transferred); Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996) (finding that transfer mooted claim for injunctive relief "against officials of the first prison"); Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003) (affirming District Court's decision that transfer from prison where inmate sought declaratory and injunctive relief concerning strip search practice mooted claim); Lehn v. Holmes, 364 F.3d 862, 871 (7th Cir. 2004).

Even if the plaintiff still were in the Waukesha County Jail, to the extent the plaintiff was seeking injunctive relief unrelated to his First Amendment free exercise claim, the court would have denied the motion because injunctive relief is appropriate only if it seeks relief from actions similar to the plaintiff's claims in the underlying case. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994); Neuroscience, Inc. v. Forrest, No. 12-cv-813, 2013 WL 6331348 at *1 (W.D. Wis. Dec 5, 2013).

The plaintiff's transfer from a county jail to a Wisconsin Department of Corrections institution, without suggestion of a return to the jail, renders moot his claim for injunctive relief.

### IV. Plaintiff's Motion to Appoint Counsel (Dkt. No. 12)

The same day the court received the plaintiff's memorandum regarding injunctive relief, it also received from him a motion for appointment of counsel. Dkt. No. 12. The plaintiff says that he cannot afford a lawyer, pointing out that he asked to proceed without prepaying the filing fee. Id. at 1. He says that his imprisonment will greatly limit his ability to litigate, the issues in this case are complex and will require significant research and investigation, he has limited access to the law library and he has limited legal knowledge. Id. He asserts that the trial in the case likely will involve conflicting testimony and that a lawyer would better enable him to present evidence and to cross-examine witnesses. Id. The plaintiff says that he has made repeated attempts to obtain a lawyer. Id. at 2.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, \_\_\_ F.3d \_\_\_, 2021 WL 456002, at * 8 (7th Cir. Feb. 9, 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel.

Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 2021 WL 456002, at *8. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 2021 WL 456002 at *8. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not satisfied the first prong of the recruitment of counsel standard. Although he states that he made repeated attempts to find a

lawyer, he has not provided the court with the names of those lawyers or explained how and when he tried to contact them or described their responses. Even if the plaintiff had made a reasonable attempt to find a lawyer on his own, the court would deny his motion at this time. The plaintiff's filings show that he is articulate and intelligent. His handwriting is neat and easy to read. He filed a detailed complaint and a motion for preliminary injunction (accompanied by declarations of other inmates), he cites case law and he communicates frequently with the court in clear, understandable letters and notices. He has no trouble asking for things he wants. While the court notes that the most recent letter it received from the plaintiff (sent from Waupun Correctional Institution and received by the clerk's office on June 17, 2021) appears to be in different handwriting than the submissions the court received while the plaintiff was at Waukesha County Jail and at Dodge, this letter, too, is clear, articulate and easy to read.[2] Dkt. No. 15. The next step in the process is for the court to have the complaint served on the defendants and for the defendants to respond. Then the court will issue a scheduling order, setting deadlines for the parties to exchange discovery. The court has included along with this order a guide with information about prosecuting the plaintiff's case which includes information on conducting discovery and pretrial motion practice. At this stage, the court believes that the plaintiff can manage the litigation himself. The court will deny without prejudice the plaintiff's motion to

---

[2] This letter begins by stating, "In my last correspondence dated 06/06/21 . . . ." Dkt. No. 15. The court has not received in this case correspondence from the plaintiff dated June 6, 2021. The court *did* receive the plaintiff's change-of-address notice on February 1, 2021, dkt. no. 14, and a letter the clerk received on June 17, 2021, asking how long it would take for the court to screen the plaintiff's cases and requesting certain forms, dkt. no. 15.

appoint counsel; if, later, it appears that the litigation has become too complex for the plaintiff to handle on his own, he may renew his request.

## V. Plaintiff's Letters Requesting Documents (Dkt. Nos. 14, 15)

On February 1, 2021, the court received from the plaintiff his notice of the change in his address from the Waukesha County Jail to Dodge Correctional Facility.[3] Dkt. No. 14. In this letter, the plaintiff also requested that the court send him copies of the order to show cause, memorandum of law and declarations he previously had filed. Id. at 1. The plaintiff also requested a subpoena for all the documents that were seized during his transfer from the Waukesha County Jail to the Dodge Correctional Institution. Id. at 1-2. The court has no authority to issue a subpoena related to other documents that may have been seized when he was transferred.

On June 17, 2021, the court received another letter from the plaintiff. Dkt. No. 15. In this letter, he asked for a sentence modification packet, an appeals practitioners' handbook and "the self-representation handbook." Id. The clerk's office responded with a letter dated June 18, 2021, in which it notified the plaintiff that to obtain copies of the documents he filed in this case, he must file a written request for a copy of the docket sheet and payment of $0.10 per page for the documents he wants copied. Dkt. No. 15-1. The letter also advised the plaintiff that this federal court does not have any of the other packets or handbooks he requested. Id.

## VI. Conclusion

---

[3] The Department of Corrections Inmate Locator web site shows that the plaintiff has moved from Dodge to Waupun, but he did not notify the court of that fact.

12

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion for preliminary injunction. Dkt. No. 8.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 12.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Angie Wollenhaupt, Michael D. Giese, CO Grace, CO Jackson/Johnson, CO Perez, CO Cattani, Captain Greenwald and Captain Gabor under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee. The court **ORDERS** the defendants to file a responsive pleading to the complaint.

The court **ORDERS** that the Warden of the Waupun Correctional Institution or his designee must collect from his institution trust account the **$315.50** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify

the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are in custody at Prisoner E-Filing Program institutions[4] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

---

[4] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 8th day of September, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

15

Case 2:20-cv-01631-PP   Filed 09/08/21   Page 15 of 15   Document 16